# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 04-3166

ALONZO L. PLAKIO, JR.,

    Defendant - Appellant.

**ORDER**
Filed December 16, 2005

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

    Appellant's motion to publish the order and judgment filed October 3, 2005, is granted.  The published opinion is attached.


                    Entered for the Court
                    Clerk of Court


                    By:
                         Deputy Clerk

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 04-3166

ALONZO L. PLAKIO, JR.,

    Defendant - Appellant.

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 03-CR-40096-RDR)**

_____

Eric F. Melgren, United States Attorney and Nancy Landis Caplinger, Assistant United States Attorney, Topeka, Kansas, for Plaintiff - Appellee.

David J. Phillips, Federal Public Defender and Melody Evans, Assistant Federal Public Defender, Topeka, Kansas, for Defendant - Appellant.

_____

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

_____

**PER CURIAM.**

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Alonzo Plakio, Jr. pled guilty to being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] Pursuant to USSG §2K2.1(a)(4)(A),[2] the district court calculated Plakio's base offense level as 20 based on a prior state felony drug conviction. Plakio objected, claiming his prior drug conviction did not constitute a felony offense under §2K2.1(a)(4)(A) because the maximum punishment for the offense for someone with his criminal history category was eleven months under the state sentencing guidelines. By his reasoning, the base offense level for the federal offense was 14, not 20. The district court disagreed and sentenced him to thirty months imprisonment. Plakio appeals pursuant to 18 U.S.C. § 3742(a)(2). We exercise jurisdiction, REVERSE and REMAND for re-sentencing.

---

[1]18 U.S.C. § 922(g)(1) provides:

(g) It shall be unlawful for any person--

> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[2] Because Plakio was sentenced pursuant to the November 5, 2003 edition of the United States Sentencing Guidelines Manual all guideline citations refer to the 2003 edition, unless noted otherwise.

ANALYSIS

We review the district court's interpretation of the sentencing guidelines de novo. *United States v. Plotts*, 347 F.3d 873, 875 (10th Cir. 2003). Section 2K2.1(a)(4)(A) dictates a base level of 20 for a violation of 18 U.S.C. § 922(g)(1), if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense . . . ." Application Note 5 of the Commentary to USSG §2K2.1 refers to USSG §4B1.2(b) for the definition of "controlled substance offense." Section 4B1.2(b) defines a controlled substance offense as an "offense under federal or state law, *punishable by imprisonment for a term exceeding one year*, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." (Emphasis added). Application Note 5 of the Commentary to §2K2.1 highlights that a prior felony conviction "means a prior adult federal or state conviction for an offense punishable by . . . imprisonment for a term exceeding one year, *regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed*." (Emphasis added). Thus, what matters is not the classification of the offense nor the actual sentence imposed, but the maximum possible sentence. *See United States v. Arnold*, 113 F.3d 1146, 1148 (10th Cir. 1997) (holding the

-4-

possibility of an upward departure from a presumptive eleven month sentence rendered the offense a felony for purposes of § 922(g)).

In order to determine the maximum possible sentence for the prior conviction in this case, we look to the state sentencing scheme. Under the Kansas Sentencing Guidelines, a felony sentence is determined by two factors: the crime of conviction and the offender's criminal history. *State v. Gould*, 23 P.3d 801, 811 (Kan. 2001). Under KAN. STAT. ANN. § 65-4141(c), Plakio's drug offense was a severity level 8, nonperson felony, which allows for a range of possible sentences between seven and twenty-three months depending on the defendant's criminal history. KAN. STAT. ANN. § 21-4704(a). A grid box divides the overall sentencing range for the offense level into nine subsets, ranging from A to I, based on the defendant's criminal history.[3] Under KAN. STAT. ANN. § 21-4704 (2000 Supp.), "[t]he sentence contained in the grid box at the juncture of the severity level of the crime of conviction and the offender's criminal history category is the presumed sentence." *Gould*, 23 P.3d at 811. Plakio's offense severity level was 8 and his criminal history score was G, exposing him to a presumptive sentencing range of nine to eleven months. Plakio received an

_____

[3] KAN. STAT. ANN. § 21-4704(c) provides that "[t]he sentencing guidelines grid is a two-dimensional crime severity and criminal history classification tool. The grid's vertical axis is the crime severity scale which classifies current crimes of conviction. The grid's horizontal axis is the criminal history scale which classifies criminal histories."

eleven month suspended sentence and was placed on probation.

The Kansas Sentencing Guidelines require a sentencing judge to "impose the presumptive sentence provided by the sentencing guidelines . . . ." KAN. STAT. ANN. § 21-4716(a) (2000 Supp.). Prior to June 26, 2000, however, Kansas courts could impose an upward departure from the presumed sentence pursuant to KAN. STAT. ANN. § 21-4716 (2000 Supp.). "Greatly simplified, K.S.A. 2000 Supp. 21-4716 allows imposition of a term beyond the maximum specified in the appropriate sentencing grid box based upon a court finding the existence of one or more aggravating factors." *Gould*, 23 P.3d at 812.

Ordinarily, the mere possibility of an upward departure (beyond one year) would render Plakio's conviction punishable by a term exceeding one year regardless of the actual sentence received. *See United States v. Norris*, 319 F.3d 1278, 1281-82 (10th Cir. 2003) (holding the possibility of an upward departure under KAN. STAT. ANN. § 21-4719(b)(2) qualifies an offense as one punishable by imprisonment for a term exceeding one year for purposes of § 922(g)(1) even though defendant's maximum presumptive sentence was less than one year and no upward departure was imposed). However, on June 26, 2000, the United States Supreme Court rendered its decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Kansas Supreme Court presciently applied the principles laid down in *Apprendi* to limit the ability of Kansas courts to depart upward from the

presumptive sentence under KAN. STAT. ANN. § 21-4716 (2000 Supp.). *Gould*, 23 P.3d at 814; *see also Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 2547 n.1 (2004) (O'Connor, J., dissenting) (noting that the Kansas Supreme Court in *Gould* was the only state court, prior to *Blakely*, to apply *Apprendi* to invalidate application of its sentencing guidelines). Under *Gould* (and *Blakely*), upward departures cannot be based on judicial fact-finding. *Gould*, 23 P.3d at 814. *Gould* retroactively applied its invalidation of KAN. STAT. ANN. § 21-4716 (2000 Supp.) to June 26, 2000, the date *Apprendi* was decided. *Id.* at 814; *see Norris*, 319 F.3d at 1282. Thus, from June 26, 2000, until June 6, 2002, the date Kansas implemented its new sentencing scheme in KAN. STAT. ANN. § 21-4718 (2003 Cum. Supp.), sentences in Kansas were limited to the maximum presumptive sentence.

Plakio's state sentencing occurred on May 9, 2001. Thus, Plakio argues that at the time of his sentencing, the maximum sentence he could receive was eleven months because the state court lacked the authority to depart from the guidelines and impose a higher sentence. The district court rejected this conclusion based on the principle of uniformity in sentences and a putative distinction between the felony analysis under § 922(g)(1) and §2K2.1(a)(4)(A). Because the maximum sentence was twenty-three months, the district court deemed Plakio's prior conviction a felony for purposes of §2K2.1(a)(4)(A). We

disagree with the district court's analysis.

Plakio's offense never qualified as a felony for purposes of the sentencing guidelines, regardless of state terminology, because he was never subject to a sentence greater than a year under Kansas law. We alluded to this conclusion in *Norris* where the defendant raised the same argument on appeal as Plakio. 319 F.3d at 1282. In *Norris*, however, we rejected the defendant's argument because his conviction became final before the date *Apprendi* was decided. *Id*. at 1283. However, we suggested in dicta that "[h]ad [the defendant's] state convictions become final after June 26, 2000, we would have before us a very different case." *Id*. Plakio now presents that case and we give effect to the logic of *Norris*. Because the sentencing court could not have imposed a sentence greater than one year, Plakio's state conviction was not a felony for the purposes of the federal sentencing guidelines. *Cf. United States v. Place*, 561 F.2d 213, 215 (10th Cir. 1977) (stating the relevant inquiry under § 922(g) is whether the district court "could have imposed" a longer sentence).

The district court's concern that Plakio's argument "allows a felony conviction under the guidelines to be determined by the peculiarities of state law" is unfounded. (R. Doc. 23 at 8.) While it is true that we have declined to look to state law for defining felonies under the sentencing guidelines, such cases involved rejecting the state's "terminology" and "nomenclature," *United States v.*

*Dell*, 359 F.3d 1347, 1349 (10th Cir. 2004); *United States v. Hines*, 133 F.3d 1360, 1364 (10th Cir. 1998), preferring instead to look to the substance of the offense. This is precisely what the sentencing guidelines direct us to do by requiring us to evaluate the maximum possible sentence under state law and not whether the offense is labeled a felony or whether the sentence imposed actually exceeded one year. Additionally, the district court had to first look to the Kansas provision setting forth the sentencing range of seven to twenty-three months for a level 8 offense (but not considering the criminal history category which limits the range to eight to eleven months) in order to qualify Plakio's offense as a felony. We cannot look at a portion of state law to determine that the offense constituted a felony and then decry the use of state law standards as threatening inconsistency. In any event, although we have previously noted the importance of uniformity in sentences as a consideration in interpreting the guidelines, *see United States v. Diaz-Bonilla*, 65 F.3d 875, 877 (10th Cir. 1995), such considerations do not trump the constitutional infirmities recognized by *Apprendi* and applied to Kansas' sentencing scheme by *Gould*.

The district court also based its decision on the fact that it was "not persuaded that the definition of felony conviction under §2K2.1 must be treated in the same way as the felony conviction requirement of § 922(g)(1)." (R. Doc. 23 at 7.) While similar, but not identical, language in the sentencing guidelines and

the substantive criminal offense is sometimes interpreted and applied differently, such divergence is predicated on the actual differences in language or definitions. *See United States v. Herrera-Roldan*, 414 F.3d 1238, 1243-44 (10th Cir. 2005) (interpreting "drug trafficking crime" under 18 U.S.C. § 924(c) differently from "drug trafficking offense" under USSG §2L1.2(b)(1)(B)). We need not decide in this case whether to interpret the felony conviction requirement in § 922(g)(1) differently from the felony conviction language in §2K2.1 or the same language in §4B1.2(b). *But see United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005) (interpreting § 922(g)(1) and §4B1.2(b) identically).

We do note, however, that the inquiry under the statute is separate from and independent of the one under the sentencing guidelines, unless indicated otherwise. Thus, the statutory definition is controlling for the actual offense, but the commentary to the guidelines controls for purposes of determining the sentence. *See United States v. Morris,* 139 F.3d 582, 584 (8th Cir. 1998). This is why Plakio's plea to being a felon-in-possession is not determinative of his objection that his prior state drug conviction is not a felony for purposes of sentencing.[4] Plakio's plea resolves the question of guilt but not of sentence.

---

[4] Plakio provides a separate argument that he had a prior state conviction for domestic battery which precluded him from possessing a firearm under 18 U.S.C. § 922(g)(1), which is why he pled to being a felon-in-possession. We note, however, that the indictment to which he pled specifically listed the state drug conviction as the predicate felony.

-10-

While Plakio pled to a predicate felony underlying the actual § 922(g)(1) offense, §2K2.1 requires the district court to conduct an examination of the state sentencing scheme to determine if the offense is a felony for sentencing purposes.

We are not persuaded by the dissent's reliance on *Harp* insofar as suggesting Plakio's criminal history is irrelevant. *Harp* follows *United States v. Jones*, 195 F.3d 205 (4th Cir. 1999), which concludes that for a crime to be punishable for a term exceeding one year, there is no need to look at the maximum sentence the individual defendant could receive. Instead, the maximum sentence is the maximum aggravated sentence without regard to a defendant's criminal history. First, such an approach is contrary to our cases which suggest that the focus is on the particular defendant. In *Arnold,* we focused on the sentence that **could** have been imposed and in *Norris* we strongly implied that had the defendant's convictions become final after the Kansas court eliminated the departure power, the state offense would not have been a felony. *Norris*, 319 F.3d at 1283; *Arnold*, 113 F.3d at 1148. Second, such an approach disregards an integral component of the Kansas sentencing scheme–criminal history. The fact that criminal history might not be known with certainty at the time of conviction cannot justify disregarding this component. Taken to its logical conclusion, such disregard means that the maximum possible sentence is the same for every defendant, regardless of criminal history, a result clearly not

-11-

contemplated by the Kansas scheme. Third, such an approach ignores that a crime must have an actor and that Kansas may (and very reasonably does) tie the maximum punishment to the characteristics of that actor. Fourth, uniformity in sentencing is not advanced when there is no possible way a defendant could have committed a felony (as defined) given the punishment scheme of a state. To the contrary, such a system seems arbitrary, treating truly unlike defendants in a like manner without regard to the actual offense.

CONCLUSION

Plakio's Kansas conviction for a controlled substance offense is not a felony for purposes of §2K2.1(a)(4)(A) and the appropriate offense level is 14. Therefore, the district court's imposition of a six level enhancement was in error and is REVERSED and this case is REMANDED for re-sentencing.

We note that Plakio's sentence should have been in the range of twelve to eighteen months. Because Plakio has continually been in custody since November 22, 2003, which is more than the eighteen month maximum, he should be released pending re-sentencing.

On June 15, 2005, Plakio filed a Motion for Release Pending Appeal. It is DENIED as moot.

The mandate shall issue forthwith.

**O'BRIEN**, Circuit Judge, dissenting.

The federal sentencing guidelines direct us to consider whether the defendant was convicted of a crime punishable by more than a year imprisonment, not whether the defendant was actually punished by more than a year imprisonment. See USSG §2K2.1, cmt. n. 5; §4B1.2(b). "What matters is not the actual sentence which the appellant received, but the *maximum possible sentence*." *Arnold*, 113 F.3d at 1148 (emphasis added). Plakio argues the maximum possible sentence must be determined in reference to a defendant's particular criminal history category. But in defining a "felony" for purposes of §2K2.1(a)(4)(A), we look to the maximum sentence possible at the time of conviction, at which the defendant's criminal history is undetermined. At the time Plakio pled to the Kansas controlled substance offense, the maximum possible sentence for someone convicted of a level 8 non-drug offense under Kansas law was twenty-three months. Because his criminal history category was not a factor at the time of conviction, the offense to which he pled guilty constituted a felony under §2K2.1(a)(4)(A).

This approach best comports with the language of §2K2.1 cmt. n.5 and §4B1.2(b), which directs us to consider whether the *crime* and not the particular *defendant* is punishable by more than a year imprisonment. In addition, it furthers the general policy of the guidelines to promote uniform sentences, *see Koon v. United States*, 518 U.S. 81, 113 (1996); *Diaz-Bonilla*, 65 F.3d at 877; *United*

*States v. Brunson*, 907 F.2d 117, 121 (10th Cir. 1990), by looking at defendants as a group rather than as individuals under state sentencing guidelines. This position is also in accord with the fourth circuit's recent opinion in *Harp*. There, under the plain error standard, it held that "to determine whether a conviction is for a crime punishable by a prison term exceeding one year [under §4B1.2(b)], . . . we consider the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." *Harp*, 406 F.3d at 246. *See also United States v. Jones*, 195 F.3d 205, 206-07 (4th Cir. 1999) (applying the same standard to § 922(g)(1)). I find the fourth circuit's reasoning persuasive. When considering state sentencing schemes under §2K2.1(a)(4)(A), we should ignore the individual defendant's criminal history category and look only to the maximum possible sentence allowed for any defendant convicted of the particular crime. This is a logical extension of our precedents in *Norris*, 319 F.3d at 1281-82,[1] and *Arnold*, 113 F.3d at 1148, which direct us to look at the maximum possible sentence and not the sentence actually imposed.

Because I would affirm Plakio's sentence, I respectfully dissent.

---

[1] While the majority is correct that the defendant in *Norris* raised the same arguments as Plakio, this Court's suggestion in *Norris* that "[h]ad Mr. Norris' state convictions become final after June 26, 2000, we would have before us a very different case," was dicta. 319 F.3d at 1283. We did not have to decide the issue in *Norris* because the defendant's conviction became final prior to the *Apprendi* decision and we are therefore not bound by the analysis suggested in *Norris*.